IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES BRICE, | ) | CIVIL ACTION NO.  2:23-cv-1611 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| BOROUGH OF DONORA, | ) | |
| | ) | |
| Defendant. | ) | Electronically Filed. |

COMPLAINT IN A CIVIL ACTION

COMES NOW, the Plaintiff, JAMES BRICE, by and through his attorneys, LAW

OFFICES OF JOEL SANSONE, JOEL S. SANSONE, ESQUIRE, MASSIMO A. TERZIGNI,

ESQUIRE, and ELIZABETH A. TUTTLE, ESQUIRE, and hereby files this Complaint in a Civil

Action as follows:

JURISDICTION AND VENUE

1.      This is an action for the redress of grievances and in vindication of civil rights guaranteed

to the Plaintiff under the Constitution of the United States and the laws enacted in furtherance

thereof, including 42 U.S.C. § 1983.

2.      This action is brought against the Defendant for violating Plaintiff's rights under the

Fourteenth Amendment of the United States Constitution and for violating Plaintiff's right to be

free from illegal, invidious and damaging discrimination in his employment based on age, as

guaranteed by the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA").

3.      Jurisdiction is founded on 28 U.S.C. § 1331 and § 1343(3).  Supplemental jurisdiction

over Plaintiff's state law claims is also proper pursuant to 28 U.S.C.A. § 1367.

4.      Venue is proper under 28 U.S.C.A. § 1391(b).  All claims set forth herein arose in the Western District of Pennsylvania, and the Plaintiff resides in the Western District of Pennsylvania.

5.      Plaintiff has satisfied all procedural and administrative requirements, and in particular:

      a.      Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") claiming age discrimination on or about January 18, 2023, at EEOC No. 533-2023-00875 and said charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC");

      b.      The EEOC issued a Notice of Right to Sue dated June 13, 2023; and,

      c.      Plaintiff's Complaint is timely filed within 90 days of Plaintiff's receipt of the Notice of Dismissal and Right to Sue.

PARTIES

5.      Plaintiff, James Brice, is a 69-year-old male who resides in Washington County, Pennsylvania.

6.      Defendant, Borough of Donora, is now, and was at all times relevant to Plaintiff's claims, a Pennsylvania municipal corporation with offices located at 602 Meldon Avenue, Donora, Pennsylvania 15033.

7.      At all times relevant hereto, the Defendant was acting through its council, officials, agents, subsidiaries, officers, employees and assigns acting within the full scope of their agency, office, employment or assignment.

8.      The actions of the Defendant, as described herein, are part of an unlawful pattern and course of conduct intended to harm the Plaintiff.  All of the acts described below were committed by the Defendant with reckless disregard and/or deliberate indifference to the rights of the Plaintiff.  As a direct and proximate result thereof, Defendant violated the Plaintiff's federally protected rights, as described herein.

FACTUAL ALLEGATIONS

6.      Plaintiff was a longtime employee of the Defendant and spent approximately forty (40)

years serving his community in various positions within the Defendant's police department, until

his unlawful termination on or about August 22, 2022.

7.      At the time of the Plaintiff's termination, he held the position of Superintendent of Police

and had maintained that position since 1989.

8.      During his many years of service, Plaintiff received no counseling or other progressive

discipline, nor was he the subject of any complaints regarding his job performance.

9.      On or about August 22, 2022, Defendant's council voted to terminate the Plaintiff's

employment.

10.     Plaintiff and Defendant's Councilmember Joseph Greco ("Greco") have a long history,

both serving as police officers throughout the 1980s and early 1990s.

11.     Mr. Greco was elected to the Defendant's council and was sworn in sometime in or about

early January of 2020.

12.     Almost immediately upon his installation to the Defendant's council, Mr. Greco took

steps to oust the Plaintiff from his leadership role within the Defendant's police department, as

more fully described herein.

13.     Mr. Greco attempted to force the Plaintiff into an early and unplanned retirement through

various means, including, but not limited to: presenting the Plaintiff with a retirement package in

January of 2020; informing the Plaintiff in April of 2020 that he was required to retire

immediately, pursuant to the Defendant's Ordinance 1181, which was later repealed and

identified as "age discrimination;" presenting the Plaintiff with an "new" contract in July of

2020, which removed certain the benefits and protections he had been receiving since 1989; and,

in August of 2021, filling the Chief of Police position after it remained vacant for thirty-four (34) years in "preparation" for the Plaintiff's retirement.

14.     Beginning in or about 2020, Defendant engaged in a course of conduct meant to harass and discriminate against the Plaintiff because of his age.

15.     In or about January of 2020, Mr. Greco presented the Plaintiff with a retirement package. At no time, however, had the Plaintiff expressed any interest in retirement.

16.     At the Plaintiff's appeal hearing before the Defendant's Civil Service Commission, in January of 2023, Mr. Greco testified that he presented the aforementioned retirement package to the Plaintiff because "counsel was looking to take some type of action against Officer Brice."

17.     In or about April of 2020, Defendant's Mayor at that time, James McDonough, II ("McDonough"), and Mr. Greco met with the Plaintiff and informed him that the Plaintiff was required to retire due to his age, sixty-six (66), in accordance with Defendant's Ordinance 1181, which required the Defendant's police officers to retire once they reached sixty-five (65) years of age.

18.     However, on or about May 15, 2020, Defendant's council voted to repeal Ordinance 1181.  Notably, that ordinance was classified at that meeting as "age discrimination,"

19.     Nevertheless, on or about May 29, 2020, Mayor McDonough sent the Plaintiff a letter informing him that he would be forced to submit a letter of resignation, as he had reached the compulsory retirement age, pursuant to Ordinance 1181.

20.     In the same letter, Mayor McDonough stated that the Plaintiff's service was admirable and thanked the Plaintiff for his service.

21.     That letter stated that the Plaintiff was required to submit his resignation within fourteen (14) days.

4

22.     However, because of the aforementioned action of Defendant's council in which it repealed the above-described ordinance, Defendant was not able to enforce a compulsory retirement age requirement.

23.     Therefore, the Plaintiff refused to resign at that time and objected to Defendant's attempt to force retirement as age discrimination in violation of the ADEA.

24.     After the Plaintiff refused to resign, and until his unlawful termination, Defendant continued to engage in a course of conduct meant to harass and discriminate against the Plaintiff because of his age and/or in retaliation for refusing to resign and invoking his rights under the ADEA, as well as further attempt by the Defendant to force the Plaintiff to retire and/or resign.

25.     During that time, Plaintiff faced unfair scrutiny from the Defendant.

26.     Plaintiff believes, and therefore avers, that the Defendant's unfair scrutiny was in retaliation for his refusal to resign and his invocation of his rights under the ADEA, as well as a further attempt by the Defendant to force the Plaintiff to retire and/or resign.

27.     In or about July of 2021, Defendant presented the Plaintiff with a new employment contract.  That contract significantly reduced the Plaintiff's benefits, allowed the Defendant to terminate the Plaintiff at any time, without reason, and required the Plaintiff to get a physical and sign a release for the Defendant to access his medical records.

28.     Plaintiff refused to sign the aforementioned contract.

29.     At or around that time, various members of Defendant's council, including Mr. Greco, also made false statements to members of the community that the Plaintiff had lung cancer. Those statements were, and are, patently false.

30.     In or about August of 2021, Defendant appointed a new chief in preparation for the Plaintiff's retirement.

31.     As stated hereinbefore, Plaintiff did not indicate to the Defendant that he was preparing to retire and had no intention of retiring at that time.

32.     On or about May 5, 2022, Plaintiff filed a lawsuit against the Defendant for claims under the Pennsylvania Wage Payment and Collections Act.

33.     On August 9, 2022, Plaintiff was informed that a *Loudermill* hearing was scheduled one (1) day later, for August 10, 2022, regarding his employment status.

34.     Defendant failed to provide the Plaintiff with adequate notice of the issues involved prior to the hearing or an explanation of its evidence against him.

35.     As a result, Plaintiff did not have an adequate opportunity to respond to the charges against him at his *Loudermill* hearing.

36.     Plaintiff attended the *Loudermill* hearing on August 10, 2022.

37.     At that time, Defendant's solicitor, Christopher Gabriel, Esquire ("Gabriel"), orally informed the Plaintiff of the allegations against him, questioned the Plaintiff and solicited responses from him regarding the allegations.

38.     Plaintiff was not provided with specific allegations against him or an explanation of the evidence against him attendant to those allegations during his *Loudermill* hearing.

39.     Plaintiff was not even provided specific dates that these alleged violations occurred.

40.     Defendant made various accusations against the Plaintiff without any specificity, including, but not limited to, accusing the Plaintiff of submitting "erroneous monthly reports of police activity to Council."  The Defendant failed to define, or explain in any way, what "erroneous monthly reports" mean or refer to.

41.     Fred Berestecky and P. Jane Ackerman were the only two (2) members of Defendant's council to be present at the Plaintiff's *Loudermill* hearing.

42.     At the conclusion of the *Loudermill* hearing, Plaintiff was informed by Attorney Gabriel that he was suspended by the Defendant.

43.     However, Defendant did not have the authority to suspend the Plaintiff, as its council did not vote to take any action against the Plaintiff at that time.

44.     Plaintiff received a Statement of Charges, dated August 22, 2022, wherein he was informed of his termination and the allegations against him.

45.     The reasons given for Plaintiff's termination are pretextual and unworthy of belief.

46.     Plaintiff entered into an employment contract with the Defendant when he was hired for the position of Supervisor of Police, attached hereto as "Exhibit A" ("Contract").

47.     The Contract states that the Plaintiff "shall not be demoted from his position without just cause and except for those reasons specified in Section 1190 of the Borough Code."

48.     Pursuant to Section 1190 of the Borough Code, "[n]o person employed in any police or fire force of any borough may be suspended without pay, removed or reduced in rank except for the following reasons:

> (1) Physical or mental disability affecting the person's ability to continue in service, in which cases the person shall receive an honorable discharge from service.

> (2) Neglect or violation of any official duty.

> (3) Violation of any law if the violation constitutes a misdemeanor or felony.

> (4) Inefficiency, neglect, intemperance, immorality, disobedience of orders or conduct unbecoming of an officer.

> (5) Intoxication while on duty.

> (6) Engaging or participating in the conduct of a political or election campaign while on duty or in uniform or while using borough property otherwise than to exercise the person's own right of suffrage.

(7) Engaging or participating in the conduct of a political or election campaign for an incompatible office as provided in section 1104(f) (relating to appointments and incompatible offices).

8 Pa.C.S. § 1190(a)

49.    Plaintiff did not engage in any activity described in the Section 1190, as stated above, which would allow the Defendant to terminate the Plaintiff, per the Contract.

50.    For the reasons stated hereinbefore above, Defendant breached the Contract in that the Plaintiff was not terminated for any of the permissible reasons outlined in the Contract.

51.    Certain allegations contained in the aforementioned Statement of Charges were substantially different from those presented at the Plaintiff's *Loudermill* hearing.

52.    The Statement of Charges accused the Plaintiff of failing "to follow directions from the Borough regarding mileage on police vehicles."

53.    Defendant's mayor, not any individual member of council acting alone, has full charge over the police force.

54.    In February of 2022, Defendant's mayor, Donald Pavelko ("Pavelko"), explicitly instructed the Plaintiff not to follow a directive regarding mileage that Mr. Greco, as an individual member of council, had issued.

55.    Mayor Pavelko's directive was lawful and, as such, was followed by the Plaintiff.

56.    The Statement of Charges also accused the Plaintiff of "turning in inaccurate time sheets for police officers[…]. By way of example, this happened on at least October 10, 2021, November 8, 2021, and November 16, 2021."

57.    At the *Loudermill* hearing, that allegation was presented as occurring sometime in December of 2021.  However, in the Statement of Charges, different dates were provided for that alleged violation, after Plaintiff stated during his *Loudermill* hearing that the scheduling

responsibilities were removed from him and given to the Chief of Police in or about November of 2021.

58.     Prior to his termination, Plaintiff was never counseled or otherwise disciplined regarding any alleged "inaccurate time sheets."

59.     The Statement of Charges again accused the Plaintiff of submitting "erroneous monthly reports of police activity to Council," without any specificity.

60.     During the Plaintiff's appeal hearing, the Defendant failed to provide any evidence whatsoever to support this claim.

61.     The Statement of Charges accused the Plaintiff of failing to "respond to 911 calls and/or calls to provide backup" on at least November 15, 2021, and March 2, 2022.

62.     During the Plaintiff's appeal hearing, Officer Michael Perry ("Perry") was unable to provide any specific evidence regarding either of the incidents identified in the Statement of Charges which form the basis of the Plaintiff's termination.

63.     In fact, Plaintiff did respond to a 911 call on November 15, 2021.  However, there was no backup requested for that call, as the Plaintiff was the only officer on duty at that time.

64.     Plaintiff does not recall any 911 calls and/or requests for backup on March 2, 2022 and first learned of this alleged call and/or request at his *Loudermill* hearing.

65.     At the *Loudermill* hearing, the Defendant again failed to provide any explanation or information regarding the incident that allegedly occurred on March 2, 2022.

66.     The Defendant did not produce any documentary evidence of this alleged call, other than a handwritten note authored by Officer Keith Charlton ("Charlton").  Officer Charlton created the handwritten note, rather than a formal incident report, at the request of someone on Council months after the incident had allegedly occurred.

67.     The Statement of Charges accused the Plaintiff of "neglect[ing] to contact Motorola Watch Guard as directed by Council."

68.     However, Plaintiff was never directed to contact Motorola Watch Guard.

69.     Although Mr. McDonough ("McDonough") and Mr. McDowell suggested that installation and/or training was needed on the Watch Guard System, it had been in place for approximately fifteen (15) years and was automatically activated.

70.     As of August of 2021, the duty to maintain the fleet, equipment and cameras fell under the responsibility of the Chief of Police, rather than the Superintendent.

71.     The Statement of Charges alleged that the Plaintiff failed to take an inventory of the evidence room after being "told" to do so.

72.     However, Plaintiff was never directed to take an inventory of the evidence room, nor was he asked to "clean up" the inventory room.

73.     As of August of 2021, the duty to "handle discovery" fell under the responsibility of the Chief of Police, rather than the Superintendent.

74.     The Statement of Charges claimed that the Plaintiff was "instructed to wear [his] protective vest" and that he "refused to do so."

75.     However, because the Plaintiff performed most of his work in the office, Mayor Pavelko told the Plaintiff that he only needed to wear his vest if the Plaintiff determined that the situation called for it.  Thereafter, Plaintiff followed Mayor Pavelko's directive.

76.     The Statement of Charges also accused the Plaintiff of failing to remove an officer from JNET.

77.     As of August of 2021, the Chief of Police was the "Admin to JNET."  Therefore, removing an officer from JNET falls under the responsibilities of the Chief of Police, not the Superintendent.

78.     Nevertheless, the officer in question was in fact removed from JNET.

79.     The Statement of Charges claimed that the Plaintiff allowed his "son to have access to the computer system with JNET and the license plate reader" and that the Plaintiff "denied this [allegation] when confronted about it."

80.     Plaintiff's son, Tanner Brice, has been employed as a "turnkey" for the Borough for approximately ten (10) years.

81.     As such, Plaintiff's son has access to the Defendant's computers and has been directed at times to use the Defendant's computer system(s) to assist various officers in their investigations, including Officer Perry.

82.     Accordingly, Plaintiff's son has maintained his state clearances regarding accessing confidential information in the possession of law enforcement.

83.     Plaintiff's son has never accessed JNET from any of the Borough's computers.

84.     Plaintiff's son did access the license plate reader, with the Plaintiff's supervision, for training purposes.  It was not improper for the Plaintiff's son to access that system.

85.     Lastly, the Statement of Charges accused the Plaintiff of "being under the influence of alcohol or other intoxicants" while performing his official duties.  That allegation was, and is, patently false.

86.     Prior to his *Loudermill* hearing, Plaintiff had never been confronted by anyone about being under the influence of anything while he was on the job.

87.    Plaintiff was never asked to submit to a blood draw and was never asked to take a breathalyzer by the Defendant.

88.    No formal report or complaint was ever filed regarding any such allegation against the Plaintiff.

89.    Plaintiff has never performed his duties as Superintendent while under the influence of alcohol or other intoxicants.

90.    Plaintiff believes, and therefore avers, for the reasons stated hereinbefore above, that he was not terminated for cause.

91.    Plaintiff further believes, and therefore avers, that he was terminated based on his age, 69, and/or in retaliation for engaging in a protected activity, to wit, invoking his rights under the Age Discrimination in Employment Act.

92.     Plaintiff believes, and therefore avers, that he was replaced in his position and/or responsibilities by a younger individual.

93.    Moreover, Plaintiff believes, and therefore avers, that younger individuals were treated more favorably, as they were not subjected to unfair scrutiny and false accusations, were asked to resign/retire because of their age, were not subjected to a *Loudermill* hearing, and/or were not terminated by the Defendant without cause.

94.    Plaintiff further believes, and therefore avers, that the actions taken against him by the Defendant, as more fully described hereinbefore above, were done in retaliation for Plaintiff exercising his right to file a lawsuit against the Defendant.

95.    As a result of the Defendant's actions, Plaintiff has been adversely affected, both financially and professionally.

96.    Plaintiff appealed his termination to the Defendant's Civil Service Commission.

97.     As more fully described hereinbefore above, several of the Defendant's council members, including Mr. Greco, voted to terminate the Plaintiff.

98.     In addition to his role as a councilman, Mr. Greco also serves on the Defendant's Civil Service Commission.

99.     Plaintiff's appeal hearing was held over 2 days: January 26, 2023, and February 8, 2023.

100.    During the Plaintiff's appeal hearing, the Defendant again failed to present sufficient evidence to support the charges against the Plaintiff.

101.    Additionally, Mr. Greco sat as a member of the commission and was called to testify during the hearing as a witness regarding the facts and circumstances surrounding the Plaintiff's termination.

102.    Apart from the Plaintiff and Mr. Greco, all other witnesses at that hearing were sequestered.

103.    Mr. Greco did eventually recuse himself from this matter, but not until after the record was closed.

104.    On or about May 25, 2023, Defendant's Civil Service Commission issued its final adjudication affirming the Plaintiff's termination and dismissing his appeal.

COUNT I:

PLAINTIFF v. DEFENDANT

ADEA – AGE DISCRIMINATION

105.    Plaintiff incorporates by reference Paragraphs 1 through 104 as though fully set forth at length herein.

106.    As described hereinbefore above, Plaintiff was subjected to discrimination in that he was subjected to unfair scrutiny and false accusations, asked to resign/retire because of his age,

subjected to a *Loudermill* hearing, subjected to unfair scrutiny, and treated less favorably than younger employees, in violation of the ADEA, 29 U.S.C. § 621, *et seq.*

107.    As a result of the Defendant's discriminatory actions, Plaintiff has been substantially and illegally harmed, suffered continuing financial losses, deprivation of employment, benefits, prerequisites, and fair treatment, and has suffered continuing emotional and physical distress and injury, embarrassment and humiliation caused by the Defendant, its managers, supervisors, employees, agents, attorneys and other officials.

108.    Plaintiff has no other plain, adequate or complete remedy at law to redress the wrongs done to him by the Defendant and this suit for injunctive and other relief is his only means of securing just and adequate redress and relief.  Moreover, Plaintiff is now suffering and will continue to suffer, irreparable injury from the Defendant's discriminatory policies, practices, customs and usages as set forth herein until and unless the same are enjoined by the Court.

109.    Defendant's actions as aforementioned were intentional, willful and deliberate and/or done with reckless disregard for the rights of the Plaintiff.

WHEREFORE, Plaintiff requests the following:

      a.      that the Court enter a judgment declaring the Defendant's actions to be unlawful and violative of the ADEA;

      b.      that the Court award the Plaintiff back pay damages and other benefits lost due to the Defendant's unlawful conduct plus interest from the date of discrimination;

      c.      that in addition to the damages above, the Court award the Plaintiff liquidated damages in an amount equal to the pecuniary losses sustained as a result of the Defendant's willful violation of the ADEA;

      d.      that the Court order the Defendant to return the Plaintiff to the position he held before he was discriminated against and/or the position most appropriate for the Plaintiff under the circumstances, with the accumulated seniority, fringe

benefits, and all other rights, or in the alternative, that the Court order the Defendant to pay the Plaintiff front pay equivalent to his lost salary, salary raises, fringe benefits and all other rights to which he would have been entitled but for the Defendant's discriminatory conduct;

e.      that the Court award the Plaintiff pre-judgment and post-judgment interest from the date of the discrimination;

f.      that the Court award the Plaintiff reasonable attorneys' fees and costs of this action; and

g.      that the Court grant the Plaintiff such additional relief as may be just and proper.

JURY TRIAL DEMANDED

COUNT II:

PLAINTIFF v. DEFENDANT

<u>ADEA – RETALIATION</u>

110.    Plaintiff incorporates by reference Paragraphs 1 through 109 as though fully set forth at length herein.

111.    As described hereinbefore above, Plaintiff was retaliated against in the nature of an illegal termination for invoking his rights under the ADEA, in violation of the ADEA, 29 U.S.C. § 621, *et seq*.

112.    As a result of the Defendant's discriminatory and retaliatory actions, Plaintiff has been substantially and illegally harmed, suffered continuing financial losses, deprivation of employment, benefits, prerequisites, and fair treatment, and has suffered continuing emotional and physical distress and injury, embarrassment and humiliation caused by the Defendant, its managers, supervisors, employees, agents, attorneys and other officials.

113.    Plaintiff has no other plain, adequate or complete remedy at law to redress the wrongs

done to him by the Defendant and this suit for injunctive and other relief is his only means of

securing just and adequate redress and relief.  Moreover, Plaintiff is now suffering and will

continue to suffer, irreparable injury from the Defendant's discriminatory policies, practices,

customs and usages as set forth herein until and unless the same are enjoined by the Court.

114.    Defendant's actions as aforementioned were intentional, willful and deliberate and/or

done with reckless disregard for the rights of the Plaintiff.

WHEREFORE, Plaintiff requests the following:

a.    that the Court enter a judgment declaring the Defendant's actions to
be unlawful and violative of the ADEA;

b.    that the Court award the Plaintiff back pay damages and other
benefits lost due to the Defendant's unlawful conduct plus interest
from the date of discrimination;

c.    that in addition to the damages above, the Court award the Plaintiff
liquidated damages in an amount equal to the pecuniary losses
sustained as a result of the Defendant's willful violation of the
ADEA;

d.    that the Court order the Defendant to return the Plaintiff to the
position he held before he was discriminated against and/or the
position most appropriate for the Plaintiff under the circumstances,
with the accumulated seniority, fringe benefits, and all other rights,
or in the alternative, that the Court order the Defendant to pay the
Plaintiff front pay equivalent to his lost salary, salary raises, fringe
benefits and all other rights to which he would have been entitled
but for the Defendant's discriminatory conduct;

e.    that the Court award the Plaintiff pre-judgment and post-judgment
interest from the date of the discrimination;

f.    that the Court award the Plaintiff reasonable attorneys' fees and
costs of this action; and

g.   that the Court grant the Plaintiff such additional relief as may be just
and proper.

JURY TRIAL DEMANDED

COUNT III:

PLAINTIFF v. DEFENDANT

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS,
SPECIFICALLY, §1983 AND THE FOURTEENTH AMENDMENT
OF THE UNITED STATES CONSTITUTION

PROCEDURAL DUE PROCESS

115.   Plaintiff incorporates by reference Paragraphs 1 through 114 as though fully set forth at

length herein.

116.   Plaintiff claims damages for the injuries set forth herein under 42 U.S.C. §1983 against

Defendant for violations of Plaintiff's constitutional rights under color of law.

117.   As described hereinbefore above, Plaintiff was unjustifiably terminated from his position

by the Defendant.

118.   As described hereinbefore above, Plaintiff was not properly notified of his *Loudermill*

hearing, as is required by law.

119.   Defendant failed to provide the Plaintiff with adequate notice of the issues involved prior

to the hearing or an explanation of its evidence against him.

120.   As a result, Plaintiff did not have an adequate opportunity to respond to the charges

against him at his *Loudermill* hearing.

121.   At the Plaintiff's *Loudermill* hearing, he was not provided with specific allegations

against him or an explanation of the evidence against him attendant to those allegations.

122.   Plaintiff was not even provided specific dates that these alleged violations occurred.

17

123.    Additionally, Plaintiff was suspended at the conclusion of that meeting, despite the fact that Defendant had no authority to suspend the Plaintiff, as its council did not vote to suspend him.

124.    At all times relevant hereto, pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Plaintiff had a constitutionally protected property interest in his position as Supervisor of Police.

125.    Defendant deprived the Plaintiff of his constitutionally protected property interest in his position as Supervisor of Police when they denied Plaintiff mandated notice of his *Loudermill* hearing and failed to provide the Plaintiff with adequate notice of the issues involved prior to the hearing or an explanation of its evidence against him.

126.    At all times relevant hereto, Defendant acted through its council and officials.

127.    As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated by Defendant, Plaintiff suffered the following injuries and damages:

    a.    Plaintiff's right under the Fourteenth Amendment to the United States Constitution of due process was violated;

    b.    loss of employment and benefits;

    c.    emotional distress;

    d.    damage to his reputation; and

    e.    economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiff demands compensatory general damages against the Defendant in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

18

COUNT IV:

PLAINTIFF v. DEFENDANT

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS,
SPECIFICALLY, §1983 AND THE FOURTEENTH AMENDMENT
OF THE UNITED STATES CONSTITUTION

<u>PROCEDURAL DUE PROCESS</u>

128.    Plaintiff incorporates by reference Paragraphs 1 through 127 as though fully set forth at

length herein.

129.    Plaintiff claims damages for the injuries set forth herein under 42 U.S.C. §1983 against

Defendant for violations of Plaintiff's constitutional rights under color of law.

130.    As more fully described hereinbefore above, several of the Defendant's council members,

including Mr. Greco, voted to terminate the Plaintiff.

131.    As described hereinbefore above, during the Plaintiff's appeal hearing before the

Defendant's Civil Service Commission, the Defendant again failed to present sufficient evidence

to support the charges against the Plaintiff.

132.    Additionally, Mr. Greco sat as a member of the commission and was called to testify

during the hearing as a witness regarding the facts and circumstances surrounding the Plaintiff's

termination.

133.    Apart from the Plaintiff and Mr. Greco, all other witnesses at that hearing were

sequestered.

134.    Mr. Greco did eventually recuse himself from this matter, but not until after the record

was closed.

135. At all times relevant hereto, pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Plaintiff had a constitutionally protected property interest in his position as Supervisor of Police.

136. Defendant deprived the Plaintiff of his constitutionally protected property interest in his position as Supervisor of Police when they denied Plaintiff mandated notice of his *Loudermill* hearing and failed to provide the Plaintiff with adequate notice of the issues involved prior to the hearing or an explanation of its evidence against him.

137. At all times relevant hereto, Defendant acted through its council, officials, and members of its Civil Service Commission.

138. As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated by Defendant, Plaintiff suffered the following injuries and damages:

      a.       Plaintiff's right under the Fourteenth Amendment to the United States Constitution of due process was violated;

      b.       loss of employment and benefits;

      c.       emotional distress;

      d.       damage to his reputation; and

      e.       economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiff demands compensatory general damages against the Defendant in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT V:

PLAINTIFF v. DEFENDANT

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS,
SPECIFICALLY, §1983 AND THE FIRST AMENDMENT
OF THE UNITED STATES CONSTITUTION

<u>RETALIATION</u>

139.    Plaintiff incorporates by reference Paragraphs 1 through 138 as though fully set forth at

length herein.

140.    At all times relevant hereto, pursuant to the First Amendment, Plaintiff had a right to be

free from retaliation based on invoking his right to take legal action against the Defendant.

141.    As described hereinbefore above, May 5, 2022, Plaintiff filed a civil action against the

Defendant for claims under the Pennsylvania Wage Payment and Collections Act.

142.    Plaintiff believes, and therefore avers, that the actions taken against him by the

Defendant, as more fully described hereinbefore above, were done in retaliation for Plaintiff

exercising his right to take legal action against the Defendant.

143.    At all times relevant hereto, Defendant acted through its council, officials, and members

of its Civil Service Commission.

144.    As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated by

Defendant, Plaintiff suffered the following injuries and damages:

      a.    Plaintiff's right under the First Amendment to the United States
           Constitution of due process was violated;

      b.    loss of employment and benefits;

      c.    emotional distress;

      d.    damage to his reputation; and

      e.    economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiff demands compensatory general damages against the Defendant in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT VI:

PLAINTIFF v. DEFENDANT

PHRA

145.    Plaintiff incorporates by reference Paragraphs 1 through 144 as though fully set forth at length herein.

146.    Defendant's actions in subjecting the Plaintiff to discrimination based on age and retaliation for engaging in a protected activity were undertaken intentionally, maliciously and with reckless indifference to Plaintiff's right to be free from such discrimination in violation of the PHRA.

147.    As a direct result of the Defendant's discriminatory and retaliatory actions in violation of the PHRA, the Plaintiff has lost wages and other economic benefits of his employment with the Defendant.  In addition, the Plaintiff has incurred counsel fees and other costs in pursuing his legal rights.  The Plaintiff has also suffered from emotional distress, inconvenience, humiliation, loss of standing among his peers and stress.

148.    The actions on the part of the Defendant were intentional and willful and were done with a reckless disregard for Plaintiff's rights.

WHEREFORE, Plaintiff requests the following:

a.    that the Court enter a Judgment declaring the Defendant's actions to be unlawful and violative of the PHRA;

b.    that the Court award the Plaintiff liquidated damages in an amount equal to the pecuniary losses sustained as a result of the Defendant's willful violation of the PHRA;

c.    that the Court award the Plaintiff compensatory damages as a result of Defendant's actions being unlawful and violative of the PHRA;

d.    that the Court award the Plaintiff pre-judgment and post-judgment interest from the date of the discrimination;

e.    that the Court award the Plaintiff reasonable attorneys' fees and costs of this action; and

f.    that the Court grant the Plaintiff such additional relief as may be just and proper.

JURY TRIAL DEMANDED

COUNT VII:

PLAINTIFF v. DEFENDANT

VIOLATION OF PLAINTIFF'S RIGHTS
UNDER PENNSYLVANIA COMMON LAW

BREACH OF CONTRACT

149.    Plaintiff incorporates by reference Paragraphs 1 through 148 as though fully set forth at length herein.

150.    An employment contract existed among the Plaintiff, as an employee, and the Defendant, as an employer, which the Defendant, through its officials, breached by terminating the Plaintiff without cause, as more fully described hereinbefore above.

151.    As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated by Defendant, Plaintiff suffered the following injuries and damages:

23

a.      Plaintiff's rights under Pennsylvania Common Law were violated;

b.      loss of employment and benefits;

c.      emotional distress;

d.      damage to his reputation; and

e.      economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiff demands compensatory general damages against the Defendant in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

s/ Joel S. Sansone
Joel S. Sansone, Esquire
PA ID No. 41008
Massimo A. Terzigni, Esquire
PA ID No. 317165
Elizabeth A. Tuttle, Esquire
PA ID No. 322888
*Counsel for Plaintiff*

Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated:  September 7, 2023